FILED
SUPERIOR COURT
OF GUAM

2022 APR 26 PM 12: 50

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| U.L.G., INC., a Guam corporation, et al., <br><br> Plaintiffs. <br><br> vs. <br><br> MARY S.N. LEON GUERRERO, et al., <br><br> Defendants. | Civil Case No. CV0776-20 <br><br><br> **DECISION AND ORDER** <br> (Motion for Summary Judgment by Defendant <br> Columbus Development Corporation) |

## INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on January 27, 2022, for a hearing on Defendant Columbus Development Corporation's ("Columbus") Motion for Summary Judgment. Present at the hearing were: Attorney Anita Arriola for Columbus, Attorney Richard Johnson for Defendants Philip Schrage and Alex Lim, Attorney Joseph McDonald for Defendants Mary and Collin Leon Guerrero, Attorney Bill Mann for Defendants Lourdes San Nicolas and Pacific American Title Insurance and Escrow Company ("PATICO"), and Attorney Delia Wolff for Plaintiffs. At the hearing Columbus argued its Motion for Summary Judgment, Plaintiffs argued in opposition, and the Court took the matter under advisement. Having considered the arguments and the applicable law, the Court hereby **GRANTS** Defendant Columbus's Motion of Summary Judgment.

## UNDISPUTED FACTS

After reviewing the record, the Court finds the following undisputed facts.

### *Original Ownership of the Properties*

1. Three brothers, Pedro, Francisco, and Agapito Leon Guerrero, each owned a one-third (1/3) interest in Lot. No. 5134-1 and Lot No. 5134-2, Tamuning, Guam. They jointly leased the two lots to Guam Kakuei Company, Ltd., for a term of 99 years. The long-term lease provides for an escalating rent every 10 years. The current rent is $3,000 per month for all the lots. Lot No. 5134-2 was subdivided and is now known as Lot No. 5134-2-1 and Lot No. 5134-2-R1 ("the Property").

2. All three brothers are now deceased and each of their successors-in-interest currently receive $1,000 per month as their one-third share of the monthly rent.

3. Guam Kakuei, as a tenant, assigned all of its interest in Lot 5134-2-1 to Baba Corporation on December 23, 1985, and all its interest in the remaining lots were assigned to American Sotetsu.

4. American Sotetsu assigned all its interest to Grandview Corporation ("Grandview") on September 3, 2003. Grandview is Columbus's sister company, and they share an office in Harmon.

5. Pedro had four children: Rita, Peter, Bernadette, and Gregory. Peter is an adult resident of Washington. Rita is an adult resident of Oklahoma. Bernadette passed away on December 20, 2020, and is now represented by her Estate.

6. Pedro conveyed his one-third (1/3) interest in the Property by Quitclaim Deed to his son Gregory on July 15, 1992.

### *Formation of U.L.G.*

7. Gregory formed U.L.G., a Guam corporation, with his two first cousins Pamela and Anthony Leon Guerrero. The three were then appointed as the first directors of U.L.G. Gregory owned 1,498 shares; Pamela and Anthony each owned one (1) share.

8. On July 15, 1992, Gregory transferred his one-third (1/3) interest in the Property to U.L.G.

9. Gregory died in 2013, and a Decree of Final Distribution in his probate case filed on July 15, 2016, conveyed all of his 1,498 shares in U.L.G. equally to his wife Mary (749 shares) and his son Collin (749 shares).

## *Mary Transfers U.L.G. Shares to Plaintiffs*

10. After Gregory's death, Mary wanted to "make things right" with Plaintiffs by dividing the U.L.G. shares with them.

11. On October 15, 2018, a series of events occurred.
    a. First, Pamela and Anthony each assigned their one (1) share, and Collin assigned his 749 shares in U.L.G. to Mary, so that Mary owned all 1,500 shares in U.L.G.

    b. Second, Mary assigned all her shares to Plaintiffs accordingly: 25% each to Peter, Rita, and Bernadette (375 shares each), and 25% (375 shares) to herself.

    c. Third, the following documents were filed at the Department of Revenue and Taxation ("DRT"):
        i. Assignment of Share Capital Stock by Anthony to Mary and Collin;
        ii. Assignment of Share Capital Stock by Pamela to Mary and Collin;
        iii. Assignment of Share Capital Stock by Collin to Mary;
        iv. Assignment of Share Capital Stock by Mary to Peter, Rita, and Bernadette;
        v. Resolution of U.L.G. Stockholders, (1) consenting to the Assignment of U.L.G. shares; (2) electing Peter, Rita, Bernadette, and Mary as U.L.G.'s four directors; (3) and approving U.L.G.'s First Amended Articles of Incorporation and First Amended Bylaws; and
        vi. Resolution of U.L.G. Directors acknowledging the Assignment of U.L.G. shares, and electing Peter as U.L.G.'s President and Treasurer and Mary as its Secretary.

12. Then, on October 31, 2018, U.L.G. filed its 2018 Annual Report confirming that Mary, Peter, Rita, and Bernadette, each owned 375 U.L.G. shares.

## *Mary's Intent to Sell the Property*

13. About a year later, in October 2019, Mary and her realtor Ramona Siblang ("Ramona") contacted Rita and Bernadette to inform them that Mary wanted to sell the Property. Rita and Bernadette told Mary she could not sell the Property. Mary became angry, saying "I've had it" and said she would call Peter.

14. When Mary contacted Peter, she told him she wanted to sell the Property for $1.5 million, but he told her not to sell the Property because the price was "too cheap." Mary said, "Never mind. Collin and I will sell it."

15. On November 4, 2019, Mary sent an offer to Columbus to sell U.L.G.'s one-third (1/3) interest in the Property for $2.5 million.

16. About a week after sending the offer to Columbus, Mary and Ramona went to DRT to review the U.L.G. corporate file. Mary then discovered that the 2018 Amended Articles and Amended By-Laws had been filed on October 18, 2018, showing that Plaintiffs each owned a one-fourth (1/4) share in U.L.G.

17. Mary became extremely upset, as she believed that Plaintiffs "stole [her] company." Mary then decided she was not going to share the sale of the Property with Plaintiffs.

18. A corporate Resolution, reflecting approval by the U.L.G. board of directors on November 8, 2019, was signed by Mary and Collin. The Resolution authorized Mary, on behalf of U.L.G., to sell the Property to Columbus. The Resolution also indicated Mary's position and title as President/Treasurer, and Collin's position and title as Corporate Secretary.

### U.L.G.'s one-third (1/3) Interest is sold to Columbus

19. Columbus is a Guam Corporation established on October 11, 1972, as a property investment entity.

20. Alex Lim ("Lim") is the Treasurer/Corporate Secretary of Columbus.

21. Phillip Schrage ("Schrage") is a representative of Columbus.

22. On November 4, 2019, Columbus received an offer from U.L.G. to purchase a one-third (1/3) interest in the Property for $2.5 million. Columbus's board of directors signed a Resolution approving the purchase of the Property, and authorizing Schrage and Lim to sign any documents relating to the transaction.

23. Escrow was opened at PATICO for the purchase of the Property on November 15, 2019.

24. On November 21, 2019, Columbus paid an initial deposit of $25,000, by check.

25. On November 22, 2019, and again on December 5, 2019, PATICO made written requests for U.L.G.'s Articles, Bylaws, Operating Agreements, and any amendments.

26. Mary and Ramona never provided such documents to PATICO or Columbus, nor did they inform PATICO or Columbus about Plaintiffs' ownership of U.L.G. shares prior to closing of the transaction.

27. On November 29, 2019, Mary filed U.L.G.'s Corporate Annual Report for 2019, which stated that she, Collin, Pamela, and Anthony were the shareholders of U.L.G. The Annual Report also indicated that Mary was President and Collin was Secretary of the corporation.

28. On December 6, 2019, Mary signed the Warranty Deed for the transaction.

29. Closing occurred on December 13, 2019.

    a. Columbus paid the purchase price (less escrow, closing and other fees) in the amount of $2,487,259.74, by a check issued by Goodwin.

    b. Lim and Schrage signed the Warranty Deed for the Property in the presence of Lourdes San Nicolas ("Lourdes") from PATICO who also notarized their signatures. This was the first and only day Schrage ever met with Lourdes. During that time, Lourdes did not inform Schrage of Peter, Rita, or Bernadette's claim to the Property or their ownership of U.L.G. shares.

    c. Columbus signed the Warrant Deed; and the Deed was then recorded at the Department of Land Management.

30. Columbus is a one-third (1/3) interest owner in the Property.

*Columbus Learns of Plaintiffs' Claim to the Property for the Frist Time*

31. In January 2020, Peter, Rita, and their spouses traveled to Guam. They met with Schrage and informed him they were shareholders in U.L.G., and that Mary and Collin had no authority to sell U.L.G.'s interest in the Property. Schrage told them that U.L.G.'s interest in the Property had been sold. This was the first time that Columbus learned of Plaintiffs' claim to the Property.

32. Prior to closing, Mary never spoke to anyone from Columbus about the transaction.

33. Prior to closing, Columbus was not aware, nor was it informed that there were Amended Articles of Incorporation or Amended Bylaws for U.L.G.

34. Prior to closing, Columbus had no actual or constructive notice of any claim to the Property by Plaintiffs.

35. Prior to closing, Columbus did not have actual or constructive notice of any family or corporate dispute between Mary and Plaintiffs.

36. Columbus did not have actual or constructive notice of Mary's alleged lack of authority to sell the Property to Columbus.

37. Columbus did not know the ownership of U.L.G. had changed in 2018. Instead, Mary provided a seemingly valid U.L.G. corporate resolution authorizing her to sell the Property to Columbus, prior to closing.

38. Columbus had no actual or constructive knowledge of Mary's alleged breach of fiduciary duty. Nor did Columbus give substantial assistance or encouragement to Mary to breach any fiduciary duty.

39. No one from Columbus ever met with Collin, Pamela or Anthony at any time.

40. Columbus did not conspire with Mary, Collin, PATICO, Lourdes, Pamela, Anthony, or Ramona to deprive U.L.G., and Plaintiffs of their interest in the Property.

41. Columbus did not commit any wrongful acts to any of the other parties in the instant case, nor did it commit any acts resulting in damages to U.L.G., and Plaintiffs.

## DISCUSSION

### I. PLAINTIFFS' UNTIMELY OPPOSITION

The Local Rules provide the requirements for filing required papers and states the following:

> Papers not timely filed by a party including any memoranda or other papers required to be filed under this Rule shall not be considered without leave of court.

Super. Ct. Guam CVR 7.1(f).

In the interest of the Court's duty to consider the merits of the case before it, especially when a motion may be dispositive, coupled with consideration to the complexity of the case and its parties; the Court hereby **GRANTS** leave to Plaintiffs' untimely Opposition. However, the Court admonishes Plaintiffs' counsel for failing to comply with the rules.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, deposition, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c); *see* also *Gov't of Guam v. Gutierrez*, 2015 Guam 8 ¶¶ 25-26. If, after adequate time for discovery, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial," then summary judgment is required. *Kim v. Hong*, 1997 Guam 11 ¶ 8.

When deciding a motion for summary judgment, "the court must draw inferences and view the evidence in a light most favorable to the non-moving party." *Gutierrez*, 2015 Guam 8 ¶ 26. If the moving party demonstrates that there are no genuine issues of material fact, the non-movant cannot merely rely on the allegations contained in the pleading and must produce some significant probative evidence to support the pleading. *Bank of Guam v. Flores*, 2004 Guam 25 ¶ 7. The court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor on that evidence." *Id.* The Guam Supreme Court of Guam has held that a defending moving party may satisfy its moving burden "by showing there is an absence of evidence" to support a claim. *Guam Sanko Transportation, Inc., v. Pacific Modair Corporation*, 2012 Guam 2 ¶ 7. It may also satisfy its burden by "producing evidence negating an essential element" or claim. *Id.*

Although the Guam Rules of Civil Procedure allow that "[a] party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for summary judgment," this does not relieve the movant from separately identifying the disputed and undisputed facts and essential elements of the cause of action for which summary dismissal is sought and applying and analyzing them under the appropriate standard. Guam R. Civ. P. 56(b); *Guam Sanko Trans.*, 2012 Guam 2 ¶ 7.

III. COUNT I: RECISSION OF THE TRANSFER OF THE PROPERTIES AND RESTITUTION

The parties' first contention, as it relates to Count I, is whether Columbus is a bona fide purchaser. "Under the bona fide purchaser doctrine, a good faith real estate purchaser for value who is without actual or constructive notice of another's interest in the property purchased has the superior interest in the property." *Taitano v. Lujan*, 2005 Guam 26 ¶ 27, Title 21 GCA §

37102; *see* also *Morioka v. I & F Corp.*, Civ. No. 91-00027A, 1991 WL 255842 at *3 (D. Guam App. Div. Nov. 18, 1991) ("To become a bona fide purchaser of property one must acquire title through payment of value, in good faith, and without actual or constructive notice of another's rights.")

### a. Lack of Notice

The most significant element required to qualify as a bona fide purchaser is the lack of notice. Notice may occur in two different forms: actual or constructive. Actual notice consists of the express information of a fact. 1 GCA § 718(a).

Constructive notice is imputed by law. *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth.*, 2020 Guam 20 ¶ 118; 1 GCA § 718(b). Under Guam law, "every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact has constructive notice of that fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." *Id.*; 1 GCA § 719. Guam's constructive notice statute relies upon the "prudent man" standard, and therefore constructive notice must be "objectively based upon the totality of the circumstances." *DFS,* 2020 Guam 20 ¶ 119; citing *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007).

Here, on November 4, 2021, Columbus received an offer from U.L.G. to purchase a one-third (1/3) interest in the Property for $2.5 million. Columbus then accepted the offer, and its board of directors signed a Resolution authorizing Schrage and Lim to sign any documents to the transaction. Escrow was opened at PATICO on November 15, 2021. Columbus paid the value of an initial deposit, in the amount of $25,000, by check, on November 21, 2019. Then on December 13, 2021, Columbus paid the value of the purchase price, in the amount of $2,487,259.74, (not including the cost of escrow, closing, and other fees) by a check issued by

Goodwind. On these facts, it is undisputed that Columbus paid value for the Property in good faith. The Court now turns its attention to notice.

Columbus lacked actual notice. Here, the evidence reflects that Columbus had actual notice of the offer made on November 4, 2019, and the Warranty Deed that Mary signed on December 6, 2019, before the closing on December 13, 2019. These two instances of expressed fact do not reflect that Columbus had actual notice of any issues related to the ownership of the Property. Instead, these expressed facts seem to reflect that there were seemingly no issues with the ownership of the Property.

Further, Columbus lacked constructive notice. Plaintiffs' hang their argument of constructive notice on the fact that escrow was opened at PATICO and that PATICO's representatives allegedly knew that there were issues with the ownership of the Property. First, the Court distinguishes Plaintiffs' classification of PATICO as Columbus's agent. PATICO's agency relationship is nothing more than that necessary for processing the transaction. This is notably different from the concept of a typical principal-agent relationship, which is what Plaintiffs seem to be asserting here. Further, nothing in the record supports Plaintiffs' argument that PATICO was acting as an agent beyond that of the escrow agent necessary for the transaction. Therefore, to the extent that PATICO may have had notice of any issues related to the ownership of the Property, such notice does not afford Columbus of constructive notice, nor does it impede Columbus from being a bona fide purchaser.

Moreover, the corporate documents also do not put Columbus on constructive notice. On November 8, 2019, Mary and Collin signed a Resolution authorizing Mary, on behalf of U.L.G., to sell the Property to Columbus. That same Resolution reflects that Mary was the President/Treasurer, and Collin was the Corporate Secretary. In objectively viewing this evidence, it is reasonable that a prudent man would believe that Mary did, in fact, have the

authority to sell the property and that she had the required approval to do so. Therefore, this evidence does not instill constructive notice of any competing claims or issues with the ownership of the Property. Instead, this evidence supports the opposite–that there was no issue with the ownership. The Court yields to the same conclusion as it relates to the Corporate Annual Report filed on November 29, 2019, which reflects that (1) Mary, Collin, Pamela, and Anthony were shareholders of U.L.G.; (2) Mary was President; and (3) Collin was Secretary. This document further validates Columbus's objective view that Mary as President had the authority to sell the Property to Columbus.

Columbus's lack of notice is further supported by the following: (1) prior to closing, Mary never spoke to anyone from Columbus about the transaction; (2) Columbus had no notice of any family or corporate dispute between Mary and Plaintiffs; and (3) Columbus was not aware, nor was it informed that there were Amended Articles of Incorporation or Amended Bylaws. Any notice Columbus may have had occurred only after the closing on December 13, 2019. Based on the totality of the circumstances, Columbus lacked constructive notice as to any issues regarding ownership of the Property. Based on the evidence, the Court finds Columbus to be a bona fide purchaser.

**b. Rescission**

The next contention, as it relates to Count I, is whether Plaintiffs are entitled to recession. Title 18 GCA section 89204, governs how rescission is effected:

Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding, of a reasonable diligence to comply with the following rules:

(1) [The rescinding party] must rescind promptly, upon discovering the fact which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and,

(2) [The rescinding party] must restore to the other party everything of value which he has received from [the other party] under the contract; or [the rescinding party] must offer to restore the same, upon condition that [the other party] shall do likewise, unless the latter is unable or positively refuses to do so.

18 GCA § 89204. Title 20 GCA section 3242, on the other hand, governs rescission in equity:

On adjudicating the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require.

20 GCA § 3242. In *Abalos v. Cyfred Ltd.*, 2006 Guam 7, the Guam Supreme Court distinguishes and clarifies the application of the statutes above. Title 18 GCA section 89204, is sourced from the former California Code 1691 known as "recession *in pais*" and arises out of a unilateral rescission by one of the parties. *Abalos,* 2006 Guam 7 ¶ 27; citing *McCall v. Super. Ct.* 36 P.2d 642, 643 (Cal. 1934). Section 89204, gives the court the equitable powers to equalize the positions of the parties to the rescission after one of the parties has already effected a rescission. *Id.* On the other hand, section 3242, is known as "rescission by equitable decree" or "rescission by judicial decree," whereby a party seeks for the court to order a recession, and to make such other orders as the court may find appropriate. *Id.* The distinction between a "rescission *in pais*" and a "recession by equitable decree," is that the former is an action seeking to enforce a rescission that took place outside of the courtroom, while the latter is an action seeking a court decree of rescission. *Id.* "In a recession *in pais*, the contract no longer exists, it having been terminated by the prior rescission; while in an equitable rescission, the contract continues to exist until set aside by the court's decree." *Id.*

Having distinguished the statutes, the Court now considers the issue of rescission in the instant matter. The circumstances of the parties in the *Abalos* case are on point here. In *Abalos*, the parties did not seek a non-judicial (or *in pais*) rescission, as they did not seek to effectuate their rescission without the assistance of the trial court. 2006 Guam 7 ¶ 30. An *in pais* recession would have been accomplished by giving notice of the election to rescind and

tendering the restoration of any value received by the party seeking to rescind. *Id*. Instead the *Abaloses* brought suit in the trial court seeking a decree of rescission and thus, the rescission statute that applied was title 20 GCA section 3242.

Here, nothing in the record reflects that the parties sought rescission without the assistance of the trial court. Instead, Plaintiffs brought suit in the instant case praying for rescission to be granted by this Court. Therefore, the Court will apply title 20 GCA section 3242, in its summary judgment analysis. Having decided that Columbus is a bona fide purchaser, rescission by court decree is improper. Columbus paid the entire purchase price and was without notice as to the issue of ownership of the Property. The Court finds that Plaintiffs are not entitled to rescission.

## IV.    COUNT III: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

The elements of the common law tort of aiding and abetting breach of fiduciary duty are that: (1) the primary tortfeasor breaches a fiduciary duty which he owes to the victim-plaintiff; (2) the aider-abettor defendant has actual knowledge of the breach; (3) the aider-abettor defendant lends the primary tortfeasor substantial assistance or encouragement in committing the breach; and (4) the victim-plaintiff suffered damages proximately caused by the breach. *Lujan v. Girardi,* No. Civ No. 09-00017, 2009 WL 5216906, at *10 (D. Ct. Guam Dec. 29, 2009).

### a.   Primary Tortfeasors Breach A Duty Which They Owe To Plaintiffs.

A defendant can be liable for aiding and abetting breach of fiduciary duty in the absence of an independent duty owed to the plaintiff. *American Master Lease LLC v. Idanta Partners, LTD.,* 225 Cal. App, 4th 1451, 1476 (Cal. App. 2014).; citing *Neilson v. Union Bank of California, N.A.* 290 F.Supp.2d 1101, 1135 (C.D. Cal. 2003).

There are two different theories to which a person may be liable for aiding and abetting a breach of fiduciary duty. One theory, like conspiracy to breach a fiduciary duty, requires that (1) the aider and abettor owe a fiduciary duty to the victim, and (2) that the aider and abettor provide substantial assistance to the person breaching his or her fiduciary duty. *Id.* at 1477; citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1144, 1144.

The second theory for imposing liability for aiding and abetting a breach of fiduciary duty arises when the aider and abettor commits an independent tort. *Id.*; see *Casey*, 127 Cal. App. 4th at 1144. This occurs when the aider and abettor makes "a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Id.*; citing *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, fn.10 (Cal. App. 2005).

Here, no evidence illustrates that Columbus breached a duty. Under the first theory, Plaintiffs have to prove that (1) Columbus owed Plaintiffs a duty, and (2) Columbus provided substantial assistance to Mary and Collin in their alleged breach of fiduciary duty. Columbus's role in the instant case is a bona fide purchaser, as established above. Therefore, Columbus owed no duty to Plaintiffs. At best, Columbus's only duty to Plaintiffs was to act as a good faith purchaser. Columbus did exactly that. Further, Columbus could not have substantially assisted Mary and Collin in their alleged breach of fiduciary duty because Columbus was completely unaware that any breach may have occurred. The evidence shows that Columbus was operating under the representation that Mary had the authority and the necessary approval to sell the Property. Columbus was unaware, uninformed, and overall lacked notice of any disputes that occurred between Mary and Plaintiffs. Therefore, Columbus could not have substantially assisted in something that it was completely blind to.

Under the second theory, Plaintiffs would have to prove that Columbus committed an independent tort. Again, there is no evidence that speaks to this claim. Instead, the evidence demonstrates that there was a transaction that was executed without flaw. Columbus received an offer. The offer was accepted. Escrow was opened. Columbus made an initial payment of $25,000. Mary signed the deed. Then, Columbus closed on the transaction by paying the purchase price of $2,487,259.74, signing the deed, and recording it. Throughout the duration of the transaction, no tort seems to have been committed by Columbus. Having failed to establish breach under either theory, the Court finds Columbus committed no breach.

**b. The Aider-Abettor Defendant Has Actual Knowledge Of The Breach**

To be liable for aiding and abetting, [the party] must have actual knowledge of the specific primary wrong in which they substantially assisted. *Casey,* 127 Cal. App. 4th at 1145. Aiding and abetting requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act. *American Master Lease*, 225 Cal. App. 4th at 1475-76.

It has been established that Columbus lacked the requisite actual knowledge to establish the wrong in which it is alleged to have assisted. This conclusion is further supported by the fact that Columbus had no actual or constructive knowledge that Mary lacked authority to sell the Property. From Columbus's perspective as a bona fide purchaser, there was no indication of a breach. The Court finds that Columbus lacked any knowledge of the alleged breach.

**c. The Aider-Abettor Defendant Lends The Primary Tortfeasor Substantial Assistance Or Encouragement In Committing Breach.**

Aiding-abetting focuses on whether a defendant knowingly gave 'substantial assistance' to someone who performed wrongful conduct. *American Master Lease*, 225 Cal. App. 4th at 1475.

Columbus did not knowingly substantially assist Mary or Collin in the alleged breach of fiduciary duty. The evidence reflects that the only thing Columbus did was purchase the property, in good faith, for value, without actual or constructive notice of Plaintiffs' rights. Columbus operated on Mary's representation that she was President of U.L.G., and that she had the required approval to sell the Property. Columbus lacked actual and constructive notice of any indication that Plaintiffs challenged or disputed Mary's authority to sell the Property. Further, besides being a bona fide purchaser, there is no evidence illustrating Columbus's encouragement or substantial assistance in committing the alleged breach. Purchasing the Property as a bona fide purchaser under these circumstances, cannot be viewed as substantial assistance of wrongful conduct. The Court finds that Columbus did not substantially assist or encourage the alleged breach.

### d. Plaintiffs Suffered Damages Proximately Caused by Breach

As discussed above, Plaintiffs fail to satisfy the elements for Count II: Aiding and Abetting Breach of Fiduciary Duty as it relates to Columbus. As such, Columbus's role as a bona fide purchaser is not the proximate cause the alleged breach that caused Plaintiffs damages.

## V. COUNT IV: CIVIL CONSPIRACY

The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts pursuant thereto, and (3) the damage resulting from such act or acts." *Moylan v. Citizens Sec. Bank,* 2015 Guam 36 ¶ 72; *see* also *Prakashpalan v. Engstrom, Lipscomb and Lack,* 223 Cal. App. 4th 1105, 1136 (Cal. App. 2014). There is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom. *Prakashpalan,* 223 Cal. App. 4th at 1136. In other words, civil conspiracy requires an agreement to participate in an unlawful activity and an

overt act that causes injury, so it does not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established. *American Master Lease*, 225 Cal. App. 4th at 1474.

Here, there is no evidence that illustrates Columbus ever agreed to form, operate, or participate in unlawful activity. The evidence only illustrates that Columbus accepted to purchase the Property after a seemingly valid offer from Mary, and did so as a bona fide purchaser. The evidence further reflects that no one from Columbus ever met with Collin, Pamela, or Anthony at any time. As such, Plaintiff fails to establish the requirements for Court III: Civil Conspiracy. Having reviewed the evidence in a light most favorable to Plaintiffs, the Court finds that summary judgment is proper for Counts I, III, and IV.

## CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant Columbus's Motion for Summary Judgment.

**IT IS SO ORDERED** ___APR 2 6 2022___.

_[signature]_
_____
**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
_Lujan, McDonald_
_Berman, Anderson, Bui..._
Date: _____ Time: ___4/26/22___
**Joseph Bamba, Jr.**
Deputy Clerk, Superior Court of Guam